Good morning, Your Honor. May it please the Court, Your Honors. I'm Anthony Solis. I am representing the appellant Yuzef Abramov. I'm a little under the weather, so forgive me. One thing I do want to clear up, I did drop in a footnote that the case was somewhat related to a case that is being considered by another panel of this court. That's the 2323C issue, and that's United States v. Pepe. That case has been pending for about nine months, but it does address the same issue as Mr. Abramov brought up in his brief, which is whether or not 2423C encompasses the conduct for a foreign resident. So if the Court would like me to address that issue, I just wanted you to know that it probably is a related case, and I was probably in error to only drop it in a footnote to make the Court aware of it, known that way, rather than identify it as a related case. So would the Court like to discuss that issue as well, considering that it's pending? Well, I would just ask this question. We were aware of that case. Okay. Just to understand the nature of the statute, and this is going to be also for counsel for the government. Out of the government's reading, am I correct that if I were to travel to Ireland now in 2018, and then 20 years from now, I stay in Ireland the whole time. Maybe I pop back occasionally for my residence requirements. I have no idea what the visa requirements are, but let's say somehow I stay in Ireland. I'm a law professor, like Judge Fletcher was once upon a time, and 20 years from now, I engage in an activity that is prohibited by the statute. I say no. That's absurd. That's an absurd result, and the panel in Pepe struggled with the same temporal requirement that Your Honor is grappling with. So if you come to a particular country, in the Pepe arguments, the Court was grappling with this absurd scenario, where you're a child. You're taken over to another country. You're born in the United States. You're a United States citizen, or you're born in a foreign country to a United States citizen, so you're a citizen. You've traveled to a country, let's just pick Germany, as a baby, and then 50 years later, you commit a sexual assault. Is that something that's supposed to be regulated by the Commerce Clause? No. That's an absurd result. It's extraterritorial. That's a domestic crime that occurs in the foreign country that should be addressed by the foreign country. But that's not — those aren't the facts here. Those are not the facts here. That's correct. But the temporal issue is something that is an issue here. Well, you argue the temporal issue only in the sense that you were saying he was a resident of Russia and, therefore, doesn't come within the statute. Correct. But if he's a resident of Russia and he travels back and forth, say, once a month, and while in Russia engages in sexual impropriety, it strikes me as the statute covers that. Let me just put that aside for one moment because those aren't the facts we have. In this case, we have the district court make a factual finding that this person wasn't a traveler who, for example, whose conduct was supposed to be embraced by the statute. He made a finding as to the B count that Mr. Abramoff was a resident of Russia, and at the time that he was going to Moscow, he was traveling home. And so when he got there, if you look at Jackson and its discussion of the temporal requirement, it essentially said, look, when you reach your home, you're not traveling anymore, and this is the statute. But, no, Jackson is such a different case. Partly we've got a retroactivity problem in Jackson. The defendant in Jackson moves to Thailand, intends to stay in Thailand, never comes back to the United States, and the traveling he did was before the statute was passed. This is such a different case. I've got the dates of his travel to and from Russia. I mean, he's traveling multiple times a year to and from Russia. He's not gone over to Russia and stayed there. So whether he's a resident of Russia, he may well be a resident of Russia. He may also be a resident of the United States. You can have a residency in both places, but residency is not in the statute. The word traveling is in the statute. Well, that's true. Number one, the district court did not make a finding that he had a dual residency. He made a finding that Moscow was his home, and that was the only residency. There was no other finding by the district court. And in this case, the finding was clear by Judge Wright. And as far as Jackson's ---- But the statute doesn't carve out an exception for resident. The statute talks about traveling, and it talks about sexual misbehavior. It doesn't say if you're a resident of the country to which you travel, you're exempt from the statute. I agree with Your Honor. However, and the reason that I brought up Jackson was not to talk about some of those other issues, because I realized the crux of Jackson was that all of these events happened before the enactment of the statute or before the effective date of the statute. But the reason I bring up Jackson is because of its discussion of when travel ends. And that brings back Judge Owen's observation that essentially he's getting to the point of when does your travel end. It has to end at some point. It can't just be some inelastic thing that no matter how long it is that you're brought within the statute. But you didn't make that argument. In fact, you specifically disavowed the argument in your reply brief. I ---- in my reply brief, I essentially say that his conduct doesn't ---- isn't covered by this particular statute because he wasn't a ---- And you specifically say, although I don't have my ---- your brief right in front of me, I didn't bring it down. But you specifically say the temporal thing is irrelevant. That is correct. I do think the temporal thing is irrelevant. So I think you walked away from that argument. No. I understand what I said in my reply brief is that because he's a citizen and resident of Russia and the district court found that, whether or not he was a temporary traveler or a long-term traveler, that temporal issue is irrelevant. So because he's there. And if you look at Jackson, it says we could find travel to end when he reaches home. And Mr. Abramoff reached his home in Russia. He wasn't a traveler of two, three weeks trying to be a sex tourist or something like that, which is exactly what the ---- all the legislative history of this particular act tries to prohibit, people traveling to another country to engage in illicit sexual activity. I do want to address ---- I do want to reserve one minute for rebuttal. And I do want to move on to the other argument, which is Mr. Abramoff's denial of substitution of counsel and his denial of a continuance. I believe that the court in this instance abused its discretion to deny both of these things for very clear reasons. The government brought up the fact that the Yappe's opinion was amended, and I acknowledge that. But it actually strengthened my argument in this regard, because in Yappe's, the court said, well, he didn't bring up any problems with his counsel. So why should the court have tried to switch his counsel? Here, Abramoff had a long list of problems that he had with his counsel that the court just completely glosses over. And then when they're in court and he starts cataloging them, the court says, well, you two have been getting along for just a year now. It's been so long. And that just denied all of the facts in both the hearing, the letters, and every opportunity that Mr. Abramoff sought to bring to the attention of the court that his relationship with his attorney had broken down. In addition, his attorney was essentially proved Mr. Abramoff's case, going to the court, lying about whether he had done all this investigation and all these witnesses. He told the court that he had video depositions. And even the court called him out on that and said that was an absolute lie. And that kind of exposed all of the things that Mr. Abramoff had brought to the attention of the court as to the problems that he had with his counsel and why he should have actually entertained the change of counsel in a reasonable continuance. And finally, Mr. Abramoff, well, I'm going to submit on that for now, and I'm going to reserve the remainder of my time for rebuttal. Okay. Sorry. Good morning. May it please the Court. V.J. Shanker for the United States. Your Honors, the issue in this case is not when the travel committed by Mr. Abramoff ended. And that is because, as this Court made clear in both Clark and Jackson, the illicit sexual conduct need not occur during the travel. It can occur thereafter. And so here, Mr. Abramoff's argument is solely that the statute does not apply to him because he resided in Russia. So we can assume, for purposes of this case, that his travel ended when he touched down in Russia. And we can even assume, for purposes of this case, that his primary residence was in Russia. It still follows, under Clark and Jackson, that he traveled from the United States to Russia and thereafter committed illicit sexual conduct. And that falls squarely within the scope of the statute. Now, to address Judge Owens ---- Now, would you argue that I'm going to take the hypotheticals that we were given before that are not the facts of this case. He travels to Russia. Twenty years later, he commits a sexual crime in Russia that would be a sexual crime here. Does the statute cover that? Your Honor, it would be a more difficult case. But I didn't ask that. I asked, would the statute cover it? Your Honor, I think it would. I think it would. Now, Clark, this Court in both Clark and Jackson punted that for another day. But the Court in Clark did note that as a due process matter, the fact of United States citizenship alleviates due process concerns in that situation. And so once you have a United States citizen, this Court found that that is sufficient to alleviate due process concerns. The question then is whether, is there still a commerce element? That means that anyone who is a United States citizen who commits a sexual crime abroad, no matter when he left the country, even if he took citizenship of another country and is now a dual citizen and commits a crime 30 years after leaving the United States, your view is that that's a crime under the statute? Your Honor, again, I think it's a more difficult question. I don't think it's presented here. And to the extent the Court is asking for an answer, my position, the government's position would be that that would be a crime. Now, again, it's not presented here. As Your Honor noted yourself, the travel here was in very close proximity to the illicit sexual conduct. And so I would hesitate to address that point when it's unnecessary in this case, and I would urge the Court to follow the pattern of Clark and Jackson and not reach that question in this case. I fully admit it's a more difficult question, but I don't think it's necessary to reach here. Now, of course, Congress addressed that situation somewhat when it added the residency element of the statute in 2013, so you could have someone who lives in another country, doesn't travel, and is liable under the statute. But certainly here, as the way the statute stood in 2009, Mr. Abramov traveled extensively back and forth between the United States and Russia in close proximity to the illicit sexual conduct, and I think this is an easy case under the statute. This is not quite apparent from the record. You may or may not feel free to answer the question, and I'm not sure it's relevant to the legal decision. But nonetheless, it strikes me. I mean, I don't usually see prosecutions for crimes committed abroad. I've seen a few that are pure sex tourism cases, but this does not appear to be a sex tourism case. It is committing rapes or sex with underage girls while abroad, but it didn't travel, at least for the purpose of doing so. How did this case come to the attention of the U.S. Attorney's Office? Why is it being prosecuted? Why is this not being prosecuted in Russia? Your Honor, it could be prosecuted in Russia. And it could. My question is why, and you may not have an answer. I mean, this is not essential to your case that you tell me the answer to this question. Right. Your Honor, I don't have an exact answer. I do think that the fact that the case could be prosecuted in Russia does not cast aside the federal government's interest. No, I understand that. Maybe you just don't know the answer to my question. I think that's correct, Your Honor. If the Court has no further questions on either that issue or the substitution issue, the government. I would like to ask you about the substitution issue. Certainly, Your Honor. It's pretty clear that the lawyer is not doing a very good job and that Judge Wright was put on notice that the judge was not doing a very good job. Judge Wright himself said, well, you know, that's not true. So why was he not entitled to change counsel when this becomes apparent? Your Honor, I'm not sure it's exactly right that the counsel wasn't doing a good job, at least under the rubric of the Sixth Amendment right to competent counsel. And I would respectfully disagree that the district court made clear that it thought that counsel wasn't doing a good job. Counsel here moved to dismiss the counsel of the indictment with fairly strong arguments. The district court at the hearing praised counsel for making strong arguments and said that it was a close issue. It then denied the motion to dismiss. It specifically said at the hearing to Mr. Abramoff, your counsel is doing a very good job. At the hearing on the motion to substitute, certainly it was a tense hearing. We were now less than a month before trial, and counsel was suddenly raising the fact that he hadn't interviewed certain witnesses and brought certain witnesses to the United States. Now, whether Mr. Abramoff has a 20- You're not on the witness list. Abramoff is saying, listen, I've got some key witnesses here, and my lawyer has done nothing. Right, your Honor. And we posited in our brief, although, again, if Mr. Abramoff wants to make an ineffective assistance claim, that's for another day. We did posit in our brief some reasonable, plausible reasons that defense counsel might not have thought those witnesses to be the most appropriate folks to have before the jury. And so those may well have been strategic decisions made by counsel. The point here is that Mr. Abramoff at the 11th hour was raising challenges to strategic decisions made by counsel. And that, as this Court has said in both Reyes-Bosk and Mendes-Sanchez and other cases mentioned in our briefs, is simply not enough to substitute counsel at that late point when, as the district court explicitly found, it would effectively derail this prosecution. Okay. Thank you. Counsel, right out of the gate, why can't this be evaluated under 2255, the substitution question? It can be. But it's before you get to 2255 with all kinds of things that are outside the record, we have to deal with the record we have, which is one of not just incompetence, but lying to the court, a fraud upon the court. Telling the court early in the case, I need a continuance, there are witnesses, we need to do foreign depositions. Then the weeks before trial saying, these witnesses are critical, I need foreign depositions. I mean, the motion was granted the day before trial started. And after the government concluded its case, counsel for the defendant is still telling the court, I have that witness that's coming by video deposition. And the court says, we know that's a lie. I just signed that thing two days ago, and you would have had to go to Russia and do that. Right. What we don't know is, we don't have the lawyer's side of the story as to why he was saying these things. I mean, for all we know, it was because his client was telling him these things. Well, to represent to the court that I have a witness that's coming by video deposition, when you know that that's not true, that's a lie, that's a fraud on the court. I guess what I'm saying is that we don't have the full, we've never had an opportunity or no court as far as I know has had the opportunity to get defense counsel's explanation for what happened. Now, you might be right. It may not be a very good one. But I don't know if we have anything. Is there anything in the record where he's had his opportunity to explain his interactions with his client? No, but I would submit that there's no opportunity that a defense counsel should have that you make an affirmative misrepresentation to the court that you have witnesses that are coming, that were coming by deposition or by either Rule 15 subpoena or by judicial assistance. When that order was done two days ago, it's effectively a lie and a fraud upon the court. No, it's not a good thing. But I will tell you, having been a prosecutor for many years, I had many times where defense counsel told the court about witnesses coming and it never showed up. So this is not the first time this has happened. There's a difference between witnesses saying you intend to bring certain witnesses or call certain witnesses and then change your mind. But in order to have called any of these witnesses, the process of bringing them to court, the process of obtaining their deposition would have at least had to have started, had to have started. This process started with letters rogatory being issued the day before trial. And they would have had to travel to Russia. And this is something that Mr. Garovitch was telling the court and his client, that they were important, precipient, they were critical, and they were coming even after the government's case closed. And what I'm saying is this is part and parcel of why Mr. Abramoff was reaching out by letter, by retaining other counsel, saying all of this stuff is not being done, I need help. And what does the court do? He rejects the letter, finds every reason to say, no, no, this train is moving forward. Even the ---- When was the first time that Mr. Abramoff tried to bring to the attention of the court that he wanted a new lawyer? How long before the scheduled trial date? As far as I can tell, in September, with the letter that he sent to the court, with his list of things and his list of complaints about the ---- And when was the scheduled trial date? I believe it was October 23rd. That would be about five weeks. And what the court did is he was saying that, you know, all this communication is broken down, yet I'm going to return that letter back to the counsel who's being completely unresponsive to you. So he's essentially stranding this person, leaving him almost no way to communicate to the court that my communication, my relationship with this person is completely broken down. And then when we get to the hearing on October 5th to request change of counsel on continuance of the trial, any continuance, even a reasonable one, the government comes with, I will submit, speculation about how difficult it would be. And if you look at the government's representations, they say subpoenas have been sent and are still being sent. Arrangements are being made and are still being made. There wasn't any challenge to that by the court to say, look, the defendant has an important constitutional right which is fundamental. I need to know whether or not any accommodation could be made to move these, because you're saying this stuff is in flux. They're not. In all the other cases that this issue comes up, the witnesses are in the hallway. It's the eve of trial. In the appease, it was in the middle of trial. I mean, I understand those things are unreasonable. At the earliest, it's five weeks before. When we're sitting in court, it's three weeks before, and the government concedes in its representations to the court, not all the arrangements have been made. The witnesses are still in Russia. Yes, any sex crime is going to have difficult, difficulty bringing witnesses and they don't want to relive it. That's it. That's in every single case. They never said anything about any of the other two continuances of the trial. But now, when this, when they, I will, I don't want to overstate it, but when they see there's now a tactical advantage, they're saying, oh, it's just the train is too  far. And then you have the court almost doesn't give any attention to the concerns that are clearly raised by the defendant, which are all very substantive. And so I think that it is an abuse of discretion to remain so uncurious about the nature and extent of the breakdown of the communications and so uncurious about how this defendant's constitutional rights can be preserved in the face of bald government that things are just so difficult. There's no declarations. There's no evidence. There's nothing. It's just mere representations that this is tough. Relations with Russia may change. And I think that in the face of that speculation, it would be an abuse of discretion to not entertain a substitution of counsel and reasonable continuance, even if that continuance wasn't the one that counsel had requested or contemplated. Okay. Thank you very much. Thank both sides for their arguments.
judges: Graber, W. Fletcher, Owens